UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MARK BARTKIEWICZ,** ) | Case No.  1:16-CV-00995 |
| c/o David B. Malik ) | |
| **Attorney at Law** ) | **JUDGE DAN POLSTER** |
| **8437 Mayfield Rd. Suite 101** ) | |
| **Chesterland, OH  44026,** ) | **SECOND AMENDED COMPLAINT** |
| ) | |
| **Plaintiff,** ) | |
| v.   ) | |
| ) | |
| ) | **Jury Demand Endorsed Hereon** |
| **CITY OF PARMA** ) | |
| **6611 Ridge Road** ) | |
| **Parma, Ohio 44129** ) | |
| ) | |
| **And** ) | |
| ) | |
| **KORI KORINEK** ) | |
| **SPENCER KRUMHEUER** ) | |
| **THOMAS KUCHLER** ) | |
| **MICHAEL WALSH** ) | |
| **SERGEANT OLIVER SIMIC** ) | |
| **JOHN DOES #1-2** ) | |
| **c/o Parma Police Department** ) | |
| **5555 Powers Blvd.** ) | |
| **Parma, OH 44129** ) | |
| ) | |
| **Individually and in Their Official** ) | |
| **Capacities as Employees of the City of** ) | |
| **Parma, Ohio,** ) | |
| ) | |
| **Defendants.** ) | |

I.      PRELIMINARY STATEMENT

1. This civil rights case seeks redress for the violation of Plaintiff Mark Bartkiewicz's

    Fourth and Fourteenth Amendment constitutional rights. This case also seeks redress for

    the state law claims of assault and battery. This case further seeks redress for federal and

1

state law claims of civil conspiracy. The violation of Mr. Bartkiewicz's state and federal rights occurred on May 29, 2015 in Parma, Ohio. On that day, Defendant Parma police officers Spencer Krumheuer, Michael Walsh, and/or John Does #1-2, used excessive, gratuitous and unreasonable force while on duty when they physically assaulted Mr. Bartkiewicz without justification. There was no legitimate or legal justification for these Defendant Officers to abuse, assault and injure Mr. Bartkiewicz. Mr. Bartkiewicz was unarmed. Mr. Bartkiewicz did not pose a threat at the time the excessive, gratuitous and unreasonable force was employed. Mr. Bartkiewicz brings this civil rights action to secure fair compensation and to encourage Parma officers to refrain from the unnecessary, illegal, gratuitous, unreasonable, and excessive use of force against unarmed and non-threatening citizens in the future.

2. Defendant Kuchler, despite being required to do so, had knowledge of the conduct of Officers Krumheuer, Walsh, and/or John Does #1-2, yet deliberately failed to report, address or even mention in any police report, the illegal gratuitous and unconstitutional use of force employed by Defendants Kuchler, Walsh, and/or John Does #1-2.

3. Defendant Korinek, despite being required to do so, had knowledge of the conduct of Defendant officers Krumheuer, Walsh, and/or John Does #1-2, yet deliberately failed to report, address or even mention in any police report, the illegal gratuitous and unconstitutional use of force employed by Defendants Krumheuer, Walsh, and/or John Does #1-2.

4. Defendant Walsh, despite being required to do so, participated in the use of force on Mark Bartkiewicz, yet deliberately failed to report, address or even mention in any police

report, the illegal gratuitous and unconstitutional use of force employed by himself and Defendants Krumheuer and/or John Does #1-2.

5. Defendants Korinek's, Krumheuer's, Kuchler's, Walsh's, and John Does #1-2's illegal and unconstitutional conduct was known, approved and ratified by agents /employees of the Defendant City of Parma and Defendant Sergeant Oliver Simic who then failed to report and conduct a meaningful and adequate investigation into the Defendant officers' illegal use of force.

6. Defendants have been sued in federal court alone between 2000 and 2014 in which persons have brought excessive force claims against the City of Parma and its law enforcement officers all alleging force that was unconstitutionally inappropriate and unjustified un the circumstances.

7. This long string of excessive force cases against the City of Parma and its law enforcement officers demonstrates a pattern and practice by the City of Parma of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to the excessive use of force.

## II. **JURISDICTION**

8. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

9. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

10. Venue is proper in this division.

### III.  THE PARTIES

11. Plaintiff Mark Bartkiewicz was a resident of Cuyahoga County, Ohio during all times relevant to this action. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution.

12. Defendant City of Parma is a unit of local government organized under laws of the State of Ohio. Defendant City of Parma is also a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

13. Defendant Kori Korinek was at all times relevant to this action an employee of the City of Parma, Ohio police department. He was serving as an on-duty patrol officer on May 29, 2015. Defendant Korinek is sued in his individual and official capacities. Defendant Korinek is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

14. Defendant Spencer Krumheuer was at all times relevant to this action an employee of the City of Parma, Ohio police department. He was serving as an on-duty patrol officer on May 29, 2015. Defendant Krumheuer is sued in his individual and official capacities. Defendant Krumheuer is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

15. Defendant Thomas Kuchler was at all times relevant to this action an employee of the City of Parma, Ohio police department. He was serving as an on-duty patrol officer on May 29, 2015. Defendant Kuchler is sued in his individual and official capacities. Defendant Kuchler is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

16. Defendant Michael Walsh was at all times relevant to this action an employee of the City of Parma, Ohio police department. He was serving as an on-duty patrol officer on May 29, 2015. Defendant Walsh is sued in his individual and official capacities. Defendant Walsh is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

17. Defendant Sergeant Oliver Simic was at all times relevant to this action an employee of the City of Parma, Ohio police department. He was serving as a Sergeant on May 29, 2015. Defendant Simic is sued in his individual and official capacities. Defendant Simic is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

18. John Does #1-2 were at all times relevant to this action employees of the City of Parma, Ohio police department. They were serving as on-duty police officers on May 29, 2015. John Does #1-2 are sued in their individual and official capacities. They are persons under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state laws

## IV. FACTS

**A. The May 29, 2015 Incident**

19. On May 29, 2015, Mark Bartkiewicz's son, Scott Bartikiewicz began an argument with his father while inside their home in Parma, Ohio.

20. Mark's son, Scott, suffers from ADHD and suffers from a bi-polar disorder which affects his personality.

21. An employee from Consumer Support Services ("CSS") was at the Bartkiewicz home for one of Scott's regular assessment visits. CSS provides social services support for individuals with developmental and other disabilities.

22. Scott physically struck his father in the presence of the CSS employee.  When Scott struck his father in the face, the CSS employee became alarmed and called 911.  This occurred at approximately 12:33 p.m. on May 29, 2015.

23. The CSS employee told the 911 operator that a "special education" man and his father were fighting in the yard, that the son punched the father, the father was bleeding from his nose, and the son had no injuries.

24. Defendant Officers Krumheuer, Walsh, Kuchler, and Korinek each received information from dispatch and they responded to the Bartkiewicz home.

25. Plaintiff's son, Scott Bartkiewicz, was well known to Parma Police Officers.  Scott had previously been arrested by Parma Police Officers approximately 13 times.  Scott's behavioral history was known to officers.

26. The Defendant Officers' familiarity with Scott Bartkiewicz even prompted Defendant Kuchler to remark to Parma dispatch that, "Sounds like Scott Bartkiewicz. Yeah that's right. That's their address on Broadview."

27. Mark Bartkiewicz, the father and victim, had never been arrested.

28. Mark Bartkiewicz was however, told on May 29, 2015 by a Parma police officer that he was under arrest.

29. The officers' scene arrival sequence is as follows: Defendant Krumheuer arrived at the Bartkiewicz home at 12:35:38; Defendant Walsh arrived at 12:37:10; Defendant Kuchler

arrived at 12:39:31; Defendant Korinek arrived at 12:41:48; and Defendant Simic arrived at 12:57:40.

30. When Defendant Officers arrived, Mark Bartikiewicz explained to the officers that Scott had struck him in the face one time.

31. Mark had a laceration on his nose and Scott had no marks or lacerations.

32. Mark calmly waited for the Defendant Officers to assess and investigate the events.

33. It was Officer Krumheuer who advised Mark, the victim, that he was under arrest.

34. Mark asked why he was being arrested since had done nothing wrong but received no answer from the officer.

35. Now victimized again because he was told he was under arrest, Mark understandably became frustrated. Because of this frustration, Mark struck an inanimate object, the side mirror on his car with his hand. Realizing there was nothing he could to at that point but cooperate Mark just stood by the car and then turned around. Mark did not harm himself in anyway. Mark posed no threat to officers or anyone else in the vicinity.

36. When Mark turned around he compliantly put his hands behind his back in order to allow Defendant Officers to arrest him-even though he had committed no crime.

37. Without probable cause and justification, Defendants Krumheuer, Walsh, and/or John Does #1-2 very suddenly and violently grabbed Mark's arms.

38. Without probable cause and justification, Defendants Krumheuer, Walsh, and/or John Does #1-2 suddenly and gratuitously used unreasonable and gratuitous force. They threw Mark to the ground face first, causing his face and shoulder to slam against the ground.

39. As Mark hit the hard ground, Defendants Krumheuer, Walsh, and/or John Does #1-2, without probable cause and justification, gratuitously yanked Mark's arms behind his back and handcuffed him.

40. Defendants Krumheuer, Walsh, and/or John Does #1-2 then unreasonably stood on Mark while he was handcuffed face down on the ground, causing him to experience additional pain to his shoulder and body.

41. The entire time, Mark's wife was calling to Defendants Officers that her husband had suffered seven heart attacks. Mark's wife thought the Defendant Officers were going to kill her husband.

42. Defendant Korinek does not mention Krumheuer's, Walsh's, or John Does #1-2's excessive and unreasonable use of force against Mark. Defendant Korinek did not complete a report

43. Defendant Krumheuer's Investigative Narrative, created on May 29, 2015 and approved by Defendant Simic, does not mention any use of force. It states, "After speaking with all parties, Scott was taken into custody for Domestic Violence without incident."

44. Defendant Walsh's Supplemental report, approved by Defendant Simic, merely states, "In an attempt to secure Mark and avoid any further injuries on himself or officers, Mark was escorted to the grass. While on the grass Mark was handcuffed and secured without any injuries." There is no mention of the unreasonable and gratuitous use of force.

45. Then Defendant Krumheuer's "Use of Force Supplemental" Incident Report Form, created the following day, and also approved by Defendant Simic, also fails to mention the use of force sufficient to cause a rotator cuff injury to Mr. Bartkiewicz.

46. After the sudden, gratuitous and unnecessary use of force against Mark by Defendants Krumheuer, Walsh, and/or John Does #1-2, Defendant Officers sat Mark up and he remained handcuffed.

47. Defendant Officers eventually removed the handcuffs on Mark Bartkiewicz.

48. Mark was not charged with a crime, because he had not committed one.

49. As a result of the illegal, unreasonable, gratuitous and excessive force Defendant Officers Krumheuer, Walsh, and/or John Does #1-2 used against Mark Bartkiewicz, he went to the hospital for his temporary and permanent injuries.

50. Mark Bartkiewicz experienced serious injuries including but not limited to severe pain in ribs and his shoulder. Mark sustained a torn rotator cuff as a result of the illegal, unreasonable, gratuitous and excessive force used by Defendant Officers Krumheuer, Walsh, and/or John Does #1-2.

51. Mark was diagnosed with bruised ribs, sprained ankle, and a torn rotator cuff by physicians. As a result of the illegal, unreasonable, gratuitous and excessive force Defendant Officers Krumheuer, Walsh, and/or John Does #1-2 used against Mark Bartkiewicz, he was required to have shoulder surgery to repair the torn rotator cuff on August 14, 2015 and will have to undergo at least one additional surgery to repair the torn rotator cuff.

52. Defendant Officers Krumheuer, Walsh, and/or John Does #1-2 at all times acted without privilege, without probable cause, without the consent of Mr. Bartkiewicz and harmfully and offensively touched him.

53. As a direct and proximate result of the unprovoked and intentional assault and harmful and offensive touching, on Mr. Bartkiewicz, he suffered permanent multiple traumas,

including but not limited to bruised ribs, sprained ankle, and a torn rotator cuff which required surgery and requires additional surgeries in the future.

54. None of Defendants' reports filed accurately indicated that the use of force used upon Mr. Bartkiewicz was excessive.

55. Defendants acted maliciously and in concert to injure Mr. Bartkiewicz's person and property. The actions of Defendants have resulted in actual damages to Mr. Bartkiewicz.

56. Mr. Bartkiewicz lost wages and will lose additional wages in the future, Mr. Bartkiewicz incurred medical bills and will incur additional medical bills in the future.

57. Defendants Krumheuer, Walsh, and/or John Does #1-2 used excessive and unreasonable force while on duty when they physically assaulted Mr. Bartkiewicz.

58. There was no reason for Defendant Officers to abuse and assault Mr. Bartkiewicz. These Defendant Officers' conduct amounted to an unnecessary, illegal, unreasonable, excessive use of force to affect an arrest that was not supported with probable cause.

59. Defendant Simic approved the incomplete and misleading reports even though he knew them to be false.

**B. Policy, Custom, and Culpable Conduct**

60. Defendant City of Parma's policies, practices, customs, and usages regarding subject control, use of force and the documentation of uses of force were and are a moving force behind the excessive force used on Mr. Bartkiewicz by Defendants Krumheuer, Walsh, and/or John Does #1-2 in this case.

61. Defendant City of Parma customarily allows officer to engage in the use of excessive force without being held accountable or disciplined for their misconduct.

62. Defendant City of Parma failed to institute adequate municipal policies, procedures, customs, usages, practices and protocols regarding use of force discipline.

63. Defendant City of Parma failed to institute and train Supervisors and officers to hold each other accountable when excessive force is utilized in the field.

64. Defendant City of Parma failed to institute adequate municipal policies, procedures, customs usages, practices and protocols regarding the use of force on non-violent citizens who are themselves victims of domestic violence.

65. Defendant City of Parma failed to adequately train officers in the management of victims of domestic violence and the assessment of domestic violence situations.

66. Defendant City of Parma further failed to institute adequate policies, procedures, customs, usages, practices and protocols for officers regarding the accuracy of individual officer reports when the use of force is used by officers or observed by officers.

67. Defendant City of Parma failed to adequately train officers how to write complete, accurate and truthful reports.

68. Defendant City of Parma has not disciplined any of the individual Defendants for the misconduct by officers described in this Complaint despite a duty to do so.

69. An investigation into the events involving the Bartkiewicz domestic violence call, if any, was so incomplete and inadequate as to constitute a ratification by the City of Parma of Defendants' conduct.

70. The training and supervision provided by Defendant City of Parma to the Defendants Officers identified herein was deliberately indifferent to the safety of the citizens, including citizens such as Mr. Bartkiewicz.

71. The conduct of the City of Parma identified above constitutes a pattern and practice and again amounts to a moving force behind the constitutional violations and injuries inflicted upon Mark Bartkiewicz.

72. This way of doing things is so permanent and well settled in the Parma Police Department that is constitutes a custom. There have been repeated complaints and notice to Defendant City of Parma of constitutional violations by Parma Police Officers.

73. This pattern and practice is illustrated by the ten cases filed in federal court alone between 2000 and 2014 in which persons have brought excessive force claims against the City of Parma and its law enforcement officers.

    a. *Damra et al. v. Cornachio et al.*, 1:00-cv-02009-LW: Parma Police Officers pulled Plaintiffs over in a traffic stop. Parma Police Officers approached the car with their guns drawn. As is the custom in the Parma Police Department, the officers, without any communication with Plaintiffs, pulled both Plaintiffs from the car, threw them on the ground, and kicked, punched, and stomped them.

    b. *McGrath v. Farinacci et al.*, 1:06-cv-00578-DAP: Parma Police Officers arrived at Plaintiff's home to serve a misdemeanor traffic warrant upon Plaintiff's brother. Nine patrol cars arrived to execute the misdemeanor traffic warrant. Officers began to tow Plaintiff's car for not having a front license plate. Plaintiff came to the front to show them his ID and proof of insurance. An officer tried to force his way in and Plaintiff lawfully retreated into his home. As is the custom in the Parma Police Department, the officers became angry and decided to force their way into Plaintiff's home. Plaintiff put his hands in the air to surrender. However, as is the custom in the Parma Police Department, the officers still

  decided to use excessive force and threw Plaintiff to the ground and beat him severely. Plaintiff suffered a broken nose, a concussion, facial swelling, bleeding, bruising.

c. *Franz et al. v. City of Parma et al.*, 1:08-cv-00177-JG: Parma Police Officers initiated a traffic stop of Plaintiffs for a turn signal failure. As is the custom in the Parma Police Department, when Plaintiff requested the name and badge number of the officer, the officer became angry and she was ordered out of her car, thrown to the ground, and arrested. As the passenger screamed for help while witnessing this happening to her friend, she was also arrested.

d. *Rababy v. City of Parma et al.*, 1:08-cv-02422-DAP: Plaintiff, a 72 year old man, was meeting with his daughter-in-law to pick up his 2 year granddaughter. The two argued and Parma Police Officers arrived. As is the custom of the Parma Police Department, officers, without communicating with Plaintiff, arrested him. As is the custom of the Parma Police Department, the officers used excessive force. Plaintiff was subdued and handcuffed when Parma Police Officers The officers threw Plaintiff to the floor and then pushed him face first through two sets of doors. Plaintiff suffered a broken nose, broken ribs, a concussion, and bruised wrists.

e. *Block v. City of Parma et al.*, 1:11-cv-00001-LW: Plaintiff, a 13 year old girl, stopped on the way home from school to watch a fight involving other kids. As is the custom of the Parma Police Department, officers without communicating with Plaintiff. As is the custom of the Parma Police Department, officers then used excessive force and lifted Plaintiff up off the ground, slammed her to the ground,

then sat on her back with great force. Plaintiff was then arrested. Parma Police Officers then force Plaintiff to hit her head on the police car and forced her into the squad car causing further injury.

f. *Zaccardelli v. Schuld et al.*, 1:13-cv-02423-SO: Plaintiff was pulled over after shortly fleeing the police. When Plaintiff stopped his vehicle, he surrendered by placing his hands up in plain sight. As is the custom of the Parma Police Department, the officers were angry and violently yanked Plaintiff out of his car, threw Plaintiff to the ground, and caused him to violently strike his head against the nearby squad car. As is the custom of the Parma Police Department, the officers then kicked and punched Plaintiff. Plaintiff suffered a skull fracture, multiple facial fractures, bilateral rib fractures, and lacerations to the face and head. Fortunately for Plaintiff, there was video of this illegal excessive force.

g. *Faiken v. City of Parma, et al.*, 1:04-cv-00293-JMM: Plaintiff was a security employee of a bowling alley. After he escorted one patron out of the bowling alley, he was re-entering the bowling alley to tend to a disturbance inside. As is the custom of the Parma Police Department, officers, without communicating with Plaintiff, violently tackled and threw Plaintiff to the ground. As is the custom of the Parma Police Department, officers then beat, kicked, and punched Plaintiff.

h. *Purnell et al. v. City of Parma, et al.*, 1:03-cv-02595-LW: Plaintiff was walking his dogs by the Parma Police Department. Both dogs were properly leashed and restrained. As is the custom of the Parma Police Department, officers, without communicating with Plaintiff, accosted Plaintiff, confiscated his dogs, used excessive force, and then arrested Plaintiff.

i. *Pettry v. City of Parma, et al*., 1:13-CV-01667-LW: Plaintiff suffered a seizure in his home after work on the night of August 1, 2013. Plaintiff's family called 911 and first EMS arrived and the officers arrived. As is the custom of the Parma Police Department, officers, without communicating with Plaintiff (who was in a seizure or postictal state) or his family. As is the custom of the Parma Police Department, officers used excessive force against Plaintiff. As is the custom of the Parma Police Department, the officers were angry and used excessive force on Plaintiff including but not limited to tasering Plaintiff multiple times. Plaintiff, still in a seizure or postictal state, was arrested..

j. *Slupski v. Dobeck et al., 1:08-cv-00813-SO*: Police arrived at the home of Plaintiff for a 911 hang up. Plaintiff and his mother both told the officer that no one in the house called 911. The officer began yelling and demanding Plaintiff's ID. The officer snatched Plaintiff's ID, and as is the custom in Parma Police Department, used force out of anger and irritation. This prompted Plaintiff to ask the officer what was wrong with him. As is the custom with Parma Police Officers, the officer became angry and told the Plaintiff that he was under arrest.

**74.** The above cases, like Plaintiff's, demonstrate that the custom and policy of the Parma Police Department is to arrive, communicate with no one, become angry, and then use excessive for and arrest people who, often, have not even committed a crime.

**75.** The unreasonable force used is extremely similar in almost all of the cases. Officers become impatient and angry with an individual, violently slam the person to the ground, and then proceed to kick and punch the person while they are down and subdued.

**76.** This behavior is so permanent and well settled that is constitutes a custom and policy of the City of Parma and the Parma Police Department.

**77.** This policy is the moving force behind the injuries suffered by Plaintiff.

**78.** This long string of excessive force cases against the City of Parma and it police officers demonstrates a pattern and practice by the City of Parma of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers when it comes to the excessive use of force.

**C. Harm to Plaintiff**

79. As a direct and proximate result of the conduct of each Defendant, Mark Bartkiewicz suffered permanent physical injury, pain, emotional and psychological trauma. He has lost wages and will lose wages indefinitely into the future.

## V. CLAIMS

### FIRST CAUSE OF ACTION– § 1983-EXCESSIVE FORCE

80. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

81. Defendants have, under color of law, deprived Mark Bartkiewicz of rights, privileges, and immunities secured to him by the United States Constitution including the right to be free from unreasonable seizures under the Fourth Amendment as applied to the States through the Fourteenth Amendment.

### SECOND CAUSE OF ACTION–ASSAULT AND BATTERY

82. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

83. Under Ohio law Defendants Krumheuer's, Walsh's, and/or John Does #1-2's acts of touching against Mark Bartkiewicz constitute battery.

84. Defendants Krumheuer, Walsh, and/or John Does #1-2 engaged in an unprivileged, intentional, harmful, offensive touching of Mark Bartkiewicz.

85. Defendants Krumheuer's, Walsh's, and/or John Does #1-2's battery was a direct and proximate cause of Mark Bartkiewicz's severe and permanent injuries.

86. As a direct and proximate result of the unprovoked, intentional, harmful, and offensive touching, on Mr. Bartkiewicz, he suffered permanent multiple traumas, including bruised ribs, sprained ankles, and a torn rotator cuff which already required surgery, and requires additional surgeries in the future.

87. Mr. Bartkiewicz lost wages and will lose additional wages in the future, Mr. Bartkiewicz incurred medical bills and will incur additional medical bills in the future.

### THIRD CAUSE OF ACTION– CLAIM FOR CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983

88. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

89. Defendants, through concerted action, by plan, and with a conspiratorial objective have deprived and continue to deprive Plaintiff of his constitutional rights. Overt acts by Defendants include reports filed which did not and do not memorialize with adequate accuracy the excessive use of force upon Mr. Mark Bartkiewiecz. Each acted in concert to remain silent regarding the level and degree of force. Observing officers acted in concert when they failed to stop the excessive use of force.

### FOURTH CAUSE OF ACTION– CLAIM FOR CIVIL CONSPIRACY UNDER OHIO LAW

90. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

91. Defendant Officers who used force and/or know who used force on Mr. Bartkiewicz are engaged in a conspiracy under Ohio Law. They have acted maliciously and in concert to injure Mr. Bartkiewicz. Each officer acted in concert by failing to accurately report as police officers the use of force, despite a duty to do so.  Each Defendant officer acted in concert by remaining silent regarding the level and degree of force.  Observing Defendant officers acted in concert by failing to stop the excessive use of force. The actions of Defendants have resulted in actual damages to Mr. Bartkiewicz by frustrating and delaying this legal action.

## VI. **JURY DEMAND**

92. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that this Court:

A.   Award Plaintiff compensatory damages in an amount to be shown at trial;

B.    Plaintiff punitive damages in an amount to be shown at trial;

C.   Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.   Pre and post judgment interest;

E.   Grant Plaintiff such additional relief as the Court deems just and proper.

/s/ Sara Gedeon<br>
David B. Malik (0023763)<br>
Sara Gedeon (0085759)<br>
8437 Mayfield Road Suite 101<br>
Chesterland, Ohio 44026<br>
(440) 729-8260<br>
(440) 490-1177<br>
dbm50@sbcglobal.net<br>
sgedeon1021@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 22, 2016 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic and/or regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Sara Gedeon
Sara Gedeon (0085759)
Attorney for Plaintiff
